**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CHRISTY ALLBORTY,

                                          Plaintiff,

              v.                                          6:14-CV-1428
                                                         (DNH/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
_____

PETER W. ANTONOWICZ, ESQ., for Plaintiff
PETER W. JEWETT, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### REPORT-RECOMMENDATION

       This matter was referred to me for report and recommendation by the Honorable

David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

       On September 15, 2011, plaintiff "protectively filed"[1] applications for Social

Security Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") benefits, alleging disability, beginning August 10, 2011, due to, _inter alia_,

degenerative disc disease and depression.  (Administrative Transcript ("T.") 22, 54, 62,

109, 110, 287, 291).  The applications were initially denied on January 3, 2012.  (T. 22,

_____

       [1] When used in conjunction with an "application" for benefits, the term "protective filing"
indicates that a written statement, "such as a letter," has been filed with the Social Security
Administration, indicating the claimant's intent to file a claim for benefits.  _See_ 20 C.F.R. §§
404.630, 416.340.  There are various requirements for this written statement.  _Id._  If a proper
statement is filed, the Social Security Administration will use the date of the written statement as the
filing date of the application even if the formal application is not filed until a later date.

109, 110).  On June 5, 2013, Administrative Law Judge ("ALJ") Gregory M. Hamel of

Falls Church, Virginia, commenced a hearing by video, during which he heard

testimony from plaintiff, who was represented by counsel, and a vocational expert.  (T.

65-108).  On July 19, 2013, ALJ Hamel issued a decision finding that plaintiff was not

disabled.  (T. 22-33).  On August 28 and November 6, 2013, plaintiff's counsel

submitted additional medical evidence to the Appeals Council, including new medical

source statements from a physician at the Veteran's Administration ("VA") clinic in

Rome, New York, covering the period from August 10, 2011 through July 2013, when

plaintiff was being treated at the VA.  (T. 8, 967, 995-996, 999-1003).  On October 14,

2014, the Appeals Council stated, in conclusory terms, that it considered the additional

medical evidence submitted by plaintiff, but found no reason under SSA rules to

review the ALJ's decision, which, accordingly, became the final decision of the

Commissioner.  (T. 1-6).

## II.     GENERALLY APPLICABLE LAW

### A.     Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he or she is "unable to engage in any substantial

gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months . . . ."  42

U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or

whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012)); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity"); *Selian*, 708 F.3d at 418 & n.2.

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417 (quoting *Talavera v. Astrue*, 697 F.3d at 151; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

In order to determine whether an ALJ's findings are supported by substantial evidence, the reviewing court must consider the whole record, examining the evidence from both sides, "'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Petrie v. Astrue*, 412 F. App'x 401, 403-404 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions."

*Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.    FACTS

### A.    Background

Plaintiff was 30 years old at the time of the administrative hearing in 2013. (T. 70). She earned a high school diploma and an associate's degree in business administration. (T. 70). She worked as a cashier in a grocery store from 1999 to 2001, served in the U.S. Army as a cook from 2001 through 2005,[2] and worked as a personal care aide from 2009 until she suffered a back injury lifting a patient in August 2011. (T. 71-72, 292). Plaintiff lived with her in-laws, her husband, and her two children, ages two and four. (T. 72-73).

At the administrative hearing, plaintiff testified about the limitations on her daily activities caused by her chronic back pain and depression. (T. 73-75, 78-95). Plaintiff stated that she cannot walk even one block, or sit or stand for ten to fifteen minutes consecutively without substantial lower back pain; and that her pain interferes with her sleep a couple of times per week. (79-83) She stated that she was able to attend to her personal care, but has problems bending over to put on her socks and shoes. (T. 78, 91). Plaintiff cares for and provides meals for her children, but requires help from the other adults in her household lifting the children, bathing them, and placing them in car seats. She plays with her children, but does not do so outdoors because she cannot

---

[2] Plaintiff alleges that she injured her back, while in the Army, lifting duffle bags and other gear on to a truck, and was required to do heavy lifting as an Army cook. VA records indicated that she ultimately received a 20% service-connected disability, although one report, on which the ALJ relied, indicated her back injury was rated 10% service connected. (T. 30, citing T.436; T. 426, 430, 490). Plaintiff served 14 months in Afghanistan. (T. 428). She received a "general under honorable" early discharge. (T. 428, 487).

"run around with them."  (T. 74, 85-86, 765, 964).  Plaintiff tries to do household chores, such as cleaning and laundry, but can only stand at the sink for five to ten minutes when doing the dishes, and cannot carry lift or carry full laundry baskets.  (T. 73-74, 86-87).  She drives a couple of times per week for appointments, but usually has a friend come along to help her with shopping because of plaintiff's inability to stand for extended periods without pain.  (T. 74-75, 765).  Plaintiff engages in social activities, such as going to the movies once per week or dining out.  However, she periodically has difficulty controlling her temper with people, and has crying spells that last half a day a couple of times per week.  (T. 75, 88-89).  She testified that she has no difficulty concentrating on things, but her "memory is shot," and she needs to write down her appointments or she will forget them.  (T. 90).  Plaintiff submitted statements from her husband, her mother-in-law, and a friend, corroborating issues with her temper and limitations on her ability to perform daily activities without substantial pain.  (T. 342-347).

## B.    Medical Evidence

Additional details regarding the medical evidence will be discussed in sections IV through VII, as necessary to address particular issues raised by the plaintiff.

### 1.    Degenerative Disc Disease

Plaintiff was treated for her lumbar spine pain between 2008 and 2013 by various providers at the VA Clinic, including physicians, physical therapists, and a chiropractor.   (See, e.g., T. 420-426, 436-465, 539-551, 644-674, 764-769, 972-992). Plaintiff was also treated for degenerative disc disease by orthopedic specialists at Rome Medical Practice, P.C. between 2010 and 2012, who referred plaintiff to a clinic

for pain management. (*See, e.g.*, T. 369-373, 376-383, 400-407, 959-964).[3] Dr. Syed of the Slocum-Dickson Medical Group treated plaintiff for "lumbar radiculopathy" in 2012 and 2013 (T. 932-958). As the ALJ acknowledged, plaintiff's lower back pain persisted despite years of conservative treatment. (T. 25). The plaintiff was reportedly scheduled for back surgery in late 2012, but the court found nothing in the record to suggest that she actually had the surgery. (T. 949, 952, 953-958).

X-rays of plaintiff's lumbar spine in April 2010 and November 2011 revealed no significant bony abnormality or other acute findings. (T. 396, 600). An MRI of plaintiff's lumbar spine in July 2011confirmed that she had mild degenerative disc disease with some bulging discs in the lumbar spine. (T. 558-559, 937, 961).[4]

Dr. Kalyani Ganesh conducted an internal medicine consultative examination of plaintiff on November 22, 2011. (T. 602-604). Dr. Ganesh noted that an MRI "suggested degenerative disk disease, herniated disk L5, and possible nerve damage." (T. 602). Plaintiff showed some limitations on her range of motion in her lumbar spine, but the doctor later observed her "bending over in full to open her pocketbook and turn of[f] her cell phone." (T.603). The straight leg raising test was negative.[5] Dr. Ganesh concluded that plaintiff had "no gross physical limitations to sitting, standing,

---

[3] Plaintiff was treated for an acute exacerbation of her chronic low back pain at the VA emergency department on December 6, 2011. (T. 742-748). She also visited the emergency department at Rome Memorial Hospital on December 28, 2011 seeking treatment for back pain and numbness in her buttocks (T. 611-619).

[4] An X-ray of plaintiff's cervical spine at the VA in June 2010 revealed "early degenerative disc disease of C5-C6 . . . consist[ing] of narrowing and early anterior osteophytic formation." (T. 452).

[5] "The Straight Leg Raising (SLR) test has been used as the primary test to diagnosis lumbar disc herniations . . . ." Majlesi J, Togay H, Unalan H, Toprak S., *The sensitivity and specificity of the Slump and the Straight Leg Raising tests in patients with lumbar disc herniation*, http://www.ncbi.nlm.nih.gov/pubmed/18391677 .

walking, or use of upper extremities." (T. 603).

On April 26, 2012, consulting doctor Mary McLarnon reviewed and affirmed the January 3, 2012 finding of a lay, agency decision maker regarding the extent of plaintiff's limitations, based on the medical evidence submitted prior to that time. The lay reviewer had determined that plaintiff could lift and carry 20 pounds occasionally and ten pound frequently, and, during an eight-hour workday, could stand and/or walk for six hours and sit for six hours. (T. 113-118, 635, 636).

On October 1, 2012, plaintiff's treating physician, Moshin Syed, M.D. submitted medical source statements with respect to plaintiff's lumbago and radiculopathy, and her associated pain and symptoms. (T. 637-639). He concluded that plaintiff could lift and carry ten pounds or less occasionally and five pounds or less frequently. (T. 638). Dr. Syed opined that during an eight-hour workday, plaintiff could only stand or walk for two hours or less and sit upright for two hours or less, and would need to lay down or recline intermittently during the day at an unpredictable frequency. (T. 638). He also found that, as a result of plaintiff' pain and other symptoms, she would be "off-task for at least 50% of the time in an 8-hour workday" and would likely be absent from work more than four days per month. (T. 637).

Clinton Conger, plaintiff's treating chiropractor at the VA, submitted a physical medical source statement dated October 5, 2102, in which he reported "positive exam findings and tenderness to palpitation in [plaintiff's] lumbar area." (T. 641). He opined, *inter alia*, that the plaintiff could lift and carry 20 pounds or less occasionally and ten pounds or less frequently. (T. 640). Dr. Conger also concluded that, during an eight-hour workday, plaintiff could only stand or walk for one hour or less and sit upright for only two hours or less. Chiropractor Conger answered "no" to questions

8

about whether plaintiff would need to lie down, recline, or elevate her feet throughout the day. (T. 640).

On July 15, 2013, Dr. Richard Sullivan of the VA prepared medical source statements regarding plaintiff's physical condition and her pain and other symptoms pertaining to the time period "from August 2011 through the present after a review of available medical records." (T. 996, 999, 1001-1002). As noted above, these medical opinions, as well as more recent medical records from the VA, were submitted to the Appeals Council after the ALJ's decision, but well before the Appeals Council denied review.

Dr. Sullivan's medical source statements report that "per patient, she suffers from unrelenting severe back pain (lower) and occasional numbness of buttocks and legs. . . . This patient has long-standing chronic pain and has failed multiple interventions." (T. 1001). Dr. Sullivan opined, *inter alia*, that plaintiff could lift and carry five pounds or less either occasionally or frequently. (T. 999). He further concluded that, during an eight-hour workday, plaintiff could only stand or walk for two hours or less and sit upright for two hours or less, and would need to lay down intermittently during the day at an unpredictable frequency. (T. 999, 1001). Dr. Sullivan also found that, as a result of plaintiff's chronic pain and other symptoms, she would be "off-task for at least 50% of the time in an 8-hour workday" and would likely be absent from work more than four days per month. (T. 996).

### 2. Depression

From July 2011 through at least January 2013, plaintiff was treated by a

psychiatrist and a social worker at the VA for anxiety and depression, relating to her chronic back pain and a history of abuse as a child. (*See, e.g.*, T. 420-421, 427-435, 647-648, 655, 656, 674, 992-993). Medication with Zoloft was generally successful in controlling plaintiff's overall mood and anxiety (T. 655, 666, 992-993), although she had occasional "crises" (*See, e.g.*, T. 648, 674).

On November 22, 2011, consultative psychologist Jeanne A. Shapiro, Ph. D. prepared a report of her mental health examination of plaintiff. (T. 595-599). Dr. Shapiro opined that, vocationally, plaintiff appeared capable of understanding and following simple instructions and directions, performing simple and some complex tasks with supervision and independently, maintaining attention and concentration for tasks, regularly attending to a routine and maintaining a schedule, making appropriate decisions, relating to and interacting moderately well with others, and dealing with stress. (T. 598). Dr. Shapiro concluded that plaintiff's "psychiatric symptoms appear largely controlled at the present time." (T. 598).

## IV. **ALJ's DECISION**

ALJ Hamel found that plaintiff met the insured status requirements for DIB through June 30, 2015. (T. 25). At step one of the sequential disability evaluation, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 10, 2011, her alleged onset date. (T. 25). The ALJ next found, at step two, that plaintiff had the following severe impairments: back pain with degenerative disc disease, depressive disorder, and anxiety disorder. (T. 25). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 25-27).

The ALJ next found that plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[6] "except she can only occasionally climb stairs, balance, stoop, kneel, crouch and crawl; cannot climb ladders and similar devices; can perform only routine and repetitive tasks; and cannot do tasks involving more than occasional public [contact]." (T. 27-31). In the course of his RFC analysis, the ALJ concluded that plaintiff's statements concerning the intensity, persistence, and limiting effect of her symptoms were "not entirely credible in light of several factors"–the minimal objective physical examination findings, *e.g.*, from the MRI which showed only mild degenerative changes in plaintiff's lumbar spine; her relatively extensive activities of daily living; a mental status examination with largely normal findings; and the evidence that her medications, particularly Zoloft, managed her symptoms. (T. 28).

The ALJ selectively discussed, in one page of his decision, non-opinion evidence from the approximately 650 pages of plaintiff's medical records. (T. 29). He then stated that the opinion of consultative examiner Dr. Ganesh was entitled to "great weight" "insofar as it is suggested that the claimant is capable of at least light work with no gross deficits in sitting, standing, walking, or use of upper extremities." (T. 30, citing T. 603). He also gave "great weight" to "Dr. Shapiro's conclusion that [plaintiff] appeared capable of maintaining attention and concentration and attending to a routine and maintaining a schedule." (T. 30, citing T. 598).

The ALJ gave "little weight" to Dr. Syed's October 2012 opinion that plaintiff

---

[6] The ALJ elaborated that "light work requires lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. Many light jobs are performed while standing, and those performed in the seated position often require the worker to operate arm or leg controls." (T. 27 n. 2).

had much more substantial limitations with respect to her ability to walk, stand, sit, lift and carry, or to stay on-task in a work setting. (T. 30). The ALJ found that Dr. Syed's opinion was not supported by his own treatment notes (T. 29, 30, citing T. 932, 934, 949, 951, 953),[7] and were inconsistent with Dr. Ganesh's November 2011 findings (T. 30, citing T. 600-604), and the scope of plaintiff's daily activities (T. 30).

The ALJ gave "some limited weight" to the opinion of plaintiff's treating chiropractor, Dr. Conger, that she could lift and carry 20 pounds occasionally and ten pounds frequently and had no manipulative limitations. (T. 30). However, "only limited weight" was given to Dr. Conger's opinion that plaintiff could only stand one hour and sit two hours during an eight-hour day, but did not need to lie down or elevate her feet intermittently throughout the day. The ALJ stated "[i]t is unclear what the [plaintiff] would be able to do for the other 5 hours of the day that does not involve sitting, standing, walking, reclining or elevating her feet." (T. 30). Moreover, the ALJ noted that "Dr. Conger is not an acceptable medical source." (T. 30).

---

[7] On August 14, 2012 and October 1, 2012, Dr. Syed diagnosed plaintiff's deteriorating lumbar radiculopathy, and reported that plaintiff's right leg was "at times getting numb on her" as a result of her worsening back pain. (T. 932, 935, 937, 939). The ALJ noted that Dr. Syed's examination findings indicated that plaintiff had "a full range of motion, with no weakness, and no deficits in reflexes or sensation." (T. 29). In fact, Dr. Syed's electronic notes regarding plaintiff's musculoskeletal exam referenced her head/neck, upper and lower extremities, and her "spine/ribs and pelvis." (T. 934, 939). However, more specific examination findings in August 2012 by plaintiff's treating chiropractor at the VA noted significant reductions in plaintiff's range of motion in her lumbar spine. (T. 652-653). The ALJ also observed that Dr. Syed noted that plaintiff's back pain was "stable on pain mediation" as of November 12, 2012 (T. 29), but did not mention that plaintiff was, at that time, reportedly scheduled for back surgery the following month, suggesting that her condition was not substantially improved. (See T. 949). The ALJ also stated that in May 3, 2013, Dr. Syed reported that plaintiff denied back pain (T. 29), although that same electronic notation appears in most of Dr. Syed's records, even when more specific observations made clear that the plaintiff was experiencing substantial back pain. (*See, e.g.*, 932-933, 937-938, 941-42). Plaintiff did report to Dr. Syed that her back pain was responding well to narcotic medication in May 2013, with no indication that plaintiff actually had back surgery. (T. 953).

The ALJ gave "significant weight" to the opinion of Mary McLarnon, M.D., of the Disability Determination Services, who affirmed the finding of a lay decision maker that claimant could lift and carry 20 pounds occasionally and ten pound frequently, and, during an eight-hour workday, could stand and/or walk for six hours and sit for six hours. The ALJ found this opinion was consistent with the medical evidence viewed as a whole and with claimant's description of her daily activities. (T. 30).

At step four, the ALJ, relying on the testimony of the Vocational Expert ("VE"), found that plaintiff was not able to perform her past relevant work. (T. 31, 97-99). At step five, the ALJ, again relying on the testimony of the VE, found that there were a significant number of other jobs in the national economy that plaintiff could perform, both at the light and sedentary work levels. (T. 31-32, 99-101). The VE testified that an employee would not be able to perform any jobs if she was off-task for more than 10% to 20% of the workday or had more than one or two unexcused absences per month. (T. 101-102). However, the ALJ did not credit the medical opinion of Dr. Syed that plaintiff would be off task at least 50% of the workday and would have four or more unexcused absences per month. (T. 30). Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act. (T. 35).

## V. ISSUES IN CONTENTION

Plaintiff makes the following arguments:

(1)    The commissioner erred by selectively considering the medical evidence[8]

---

[8] Plaintiff's brief (at 2-10) provided numerous examples of evidence from the voluminous medical records that were apparently overlooked by the ALJ and/or were purportedly inconsistent with the portions of the medical evidence upon which the ALJ relied. For example, while stating that Rome Medical Group noted that plaintiff had negative straight leg raising bilaterally between April and June 2010, before plaintiff's onset date (T. 29, citing T. 373, 376,

and by giving greater weight to the opinions of consulting physicians than was given to plaintiff's treating chiropractor and physician. (Pl.'s Brief at 1, 2-12, 14-16, 17-20, Dkt. No. 12).

(2)     The ALJ erred by retaining consultative examiners, rather than contacting a treating source for a consultative opinion. (Pl.'s Brief at 1, 12-14).

(3)     The Commissioner erred by failing to consider and discuss the additional medical evidence submitted to the Appeals Council after the ALJ rendered his decision, particularly the medical source statement of Dr. Sullivan. (Pl.'s Brief at 1, 16-17).

Defendant argues that the ALJ properly weighed the competing medical evidence, and that substantial evidence supported the ALJ's decision. (Def.'s Brief at 5-8, 11-12, Dkt. No. 13). Defendant contends that use of independent sources for consultative examinations was within the discretion of the ALJ. (Def.'s Brief at 8-10). Finally, the defendant argues that the Appeals Council acknowledged the additional evidence submitted by the plaintiff, but was not required to explain how it evaluated that evidence. (T. 12-13).

For the reasons set forth below, this court concludes that remand of this case is appropriate because the Appeals Council erred by not granting review of the ALJ's decision based on the newly submitted medical opinion evidence, without any discussion of its reasons for rejecting that new opinion evidence. While the court will

---

377, 380, 382, 383), the ALJ did not mention that the same medical group noted positive straight leg raising between August and November 2011, after plaintiff's onset date. (T. 959, 964-966). The ALJ cited an April 2011 report from a nurse practitioner at the VA who opined that plaintiff's low back pain was stable and that plaintiff had a full range of motion in her back. (T. 29, citing T. 515). The ALJ did not mention other examinations at the VA, e.g., in July 2011, July 2012, and August 2012, when various medical providers including a physician and a chiropractor found that plaintiff had a reduced range of motion in her lumbar spine and, in July 2012, "progressive[ly] worsening" chronic low back pain. (T. 439-440, 652-653, 669).

provide some guidance to the parties about how the other issues raised by the plaintiff should be considered on remand, those issues need not be addressed in full given my conclusion that remand is required by virtue of the Appeals Council's error.

## VI.   **EVIDENCE SUBMITTED TO THE APPEALS COUNCIL**

### A.   **Applicable Law**

Under 20 C.F.R. §§ 404.970(b) and 416.1470(b), a plaintiff is authorized to submit new evidence to the Appeals Council without demonstrating good cause. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). Under the regulations, the Appeals Council must consider new and material evidence if it relates to the period on or before the date of the administrative law judge hearing decision. *Id.* Even if the Appeals Council denies review, evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record to be considered on judicial review. *Id.* The role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision. *Sears v. Colvin*, No. 8:12-CV-570 (MAD/ATB), 2013 WL 6506496, at *5 (N.D.N.Y. Dec. 12, 2013) (*citing Woodford v. Apfel*, 93 F. Supp. 2d 521, 528 (S.D.N.Y. 2000)). If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." *Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 (D. Conn. 2009) (citation omitted); *Sears v. Colvin*, 2013 WL 6506496, at *5, 7 (a sentence four remand is warranted when the Appeal Counsel failed to adequately address additional evidence that could potentially fill "significant gaps in the record . . . [and could] plainly help to assure the proper disposition of a claim") (citation omitted).

15

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). "Materiality requires that the new evidence not concern 'a later-acquired disability or the subsequent deterioration of the previous non-disabling condition.'" *Pearson v. Astrue*, 1:10-CV-521 (MAD), 2012 WL 527675, at *11 (N.D.N.Y. Feb. 17, 2012) (citing *Estevez v. Apfel*, 97 Civ. 4034, 1998 WL 872410, at *7 (S.D.N.Y. Dec. 14, 1998)).

"[W]hen claimants submit to the Appeals Council treating-physician opinions on the nature and severity of their impairments during the relevant period of disability, 'the treating physician rule applies, and the Appeal's Council must give good reasons for the weight accorded to' that opinion." *Djuzo v. Comm'r of Soc. Sec.*, No. 5:13-CV-272 (GLS/ESH), 2014 WL 5823104, at *3 (N.D.N.Y. Nov. 7, 2014) (citing, *inter alia*, *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).[9]  Further, "[i]t is insufficient for the Appeals Council to merely acknowledge that they reviewed new evidence from a treating physician without providing such reasoning." *Seifried ex rel. A.A.B. v. Commissioner of Soc. Sec.*, No. 6:13-CV-347 (LEK/TWD), 2014 WL 4828191, at *4 (N.D.N.Y. Sept. 29, 2014) (citation omitted).

### B.    Analysis

---

[9] "[A] treating physician's report is generally given more weight than other reports and . . . a treating physician's opinion will be controlling if it is "well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record." *Snell v. Apfel*, 177 F.3d at 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)).  If the ALJ rejects the report of a treating physician, he must properly analyze the reasons that the report is rejected.  *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2004).

As noted above, plaintiff submitted additional medical records from the VA to the Appeals Council, after the ALJ's decision, but well before the Appeals Council denied review. Those records included medical source statements from Dr. Richard Sullivan assessing plaintiff's physical condition and her pain and other symptoms during the time period "from August 2011 through the present after a review of available medical records." (T. 996, 999, 1001-1002). This newly submitted medical evidence related to the period between plaintiff's alleged onset date and the ALJ's decision, and should have been considered by the Appeals Council.

Dr. Sullivan opined, *inter alia*, that plaintiff could lift and carry five pounds or less either occasionally or frequently. (T. 999). He further concluded that, during an eight-hour workday, plaintiff could only stand or walk for two hours or less and sit upright for two hours or less. (T. 999). Dr. Sullivan's opinions, like those of plaintiff's treating chiropractor, Dr. Conger of the VA, and her treating physician, Dr. Syed, are inconsistent with the ALJ's finding that plaintiff could perform light work[10] or even sedentary work.[11] Dr. Sullivan, like Dr. Syed, also found that, as a result of

---

[10] Under 20 C.F.R. § 404.1567(b), light work requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Dr. Conger opined that plaintiff was capable of lifting and carrying at that level (T. 640), but Dr. Syed did not (T. 638). Social Security Ruling 83-10 establishes that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5-6. *See also Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) ("The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time."). Both Dr. Conger (T. 640) and Dr. Syed (T. 638) found that plaintiff had limitations on standing, walking, and sitting that were inconsistent with the requirements of light work.

[11] The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3. Jobs are sedentary if walking and

plaintiff' chronic pain and other symptoms, she would be "off-task for at least 50% of the time in an 8-hour workday" and would likely be absent from work more than four days per month.  (T. 637, 996).  As the VE testified, an employee would not be able to perform any jobs if she was off-task for more than 10% to 20% of the workday or had more than one or two unexcused absences per month.  (T. 102).

In plaintiff's brief (at 16-17), counsel represents that "Dr. Sullivan had treated the plaintiff for more than five years[,]" which the Acting Commissioner did not challenge in her brief.  Based on the authority cited above, a remand would be justified if Dr. Sullivan were a treating physician just on the basis of the Appeals Council's failure to discuss the reasons why it rejected his opinions.

Dr. Sullivan's medical source statements provide the dates "12/2008 to present" in response to the questions regarding "first and last treatment dates" (T. 996, 1001), and he is listed on various websites as an internal medicine physician at the Rome, New York VA Clinic where plaintiff was frequently treated.[12]  However, the court could find no other reference in the voluminous VA medical records through June 4, 2013 (see T. 972), of any treatment of plaintiff by Dr. Sullivan.  Thus, Dr. Sullivan may not qualify as a "treating" physician.  *See, e.g.*, *Camarata v. Colvin*, No. 6:14-CV-00578 MAD, 2015 WL 4598811, at *4 (N.D.N.Y. July 29, 2015) (the fact

---

standing are required occasionally and other sedentary criteria are met.  "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday.  Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day."  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing SSR 83-10, 1983 WL 31251, at *5).

[12] *See, e.g.*, http://health.usnews.com/doctors/richard-sullivan-75559; http://www.healthgrades.com/physician/dr-richard-sullivan-wcy96/appointment.

that Dr. Patil is the supervising psychiatrist at the facility where plaintiff received treatment does not, on its own, mandate application of the treating physician rule; the record contains no evidence of a doctor-patient relationship between plaintiff and Dr. Patil).

Even if Dr. Sullivan was not a "treating" physician, but only evaluated plaintiff's medical records from the VA through July 2013, the court finds that his medical source statements were sufficiently material to require the Appeals Council to review the ALJ's decision.[13] The ALJ largely rejected the October 2012 opinions of a treating physician (Dr. Syed) and a treating chiropractor (Dr. Conger). He gave greater weight to the November 2011 opinion of a consultative internal medicine doctor (Dr. Ganesh),[14] who examined plaintiff once, and an April 2012 evaluation of plaintiff's early medical records by a consulting doctor (Dr. McLarnon), who never examined plaintiff. An ALJ may rely on consulting doctors[15] in finding that the opinion of a

---

[13] *See Sears v. Colvin*, 2013 WL 6506496, at *7 (there is a reasonable possibility that the ALJ would have reached a different result if the original administrative record had included the newly submitted medical records; the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision) (citing *Davidson v. Colvin*, No. 12-CV-316 (MAD/VEB), 2013 WL 5278670, at *1 (N.D.N.Y. Sept. 18, 2013)).

[14] See http://health.usnews.com/doctors/kalyani-ganesh-747680.

[15] *See, e.g., House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 151-52 (N.D.N.Y. 2012) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability), (citing, *inter alia, Leach ex rel. Murray v. Barnhart*, No. 02 Civ. 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."))

treating physician is not consistent with other substantial evidence in the record.[16]

However, in this case, the opinion of another consulting doctor, who saw more recent

medical evidence, who disagrees with the consulting doctors on whom the ALJ relied,

and who largely agrees with the two treating medical professionals whose opinion the

ALJ rejected, supports "a reasonable possibility that the new opinion evidence would

have influenced the Secretary to decide claimant's application differently." *Lisa v.

Sec'y of Dep't of Health and Human Servs*., 940 F.2d at 43.

In giving limited weight to the opinion of plaintiff's treating chiropractor, the

ALJ found an internal inconsistency in Dr. Conger's findings that plaintiff could only

stand one hour and sit two hours during an eight-hour day, but did not need to lie down

or elevate her feet intermittently throughout the day. (T. 30). The ALJ also noted

correctly that a chiropractor is not an "acceptable medical source" whose diagnoses are

entitled to controlling weight. (T. 30). *See Losquadro v. Astrue*, No. 11-CV-1798,

2012 WL 4342069, at *14 (E.D.N.Y. Sept. 21, 2012) (although a chiropractor does not

qualify as an "acceptable medical source," a chiropractor is an "other source," whose

opinion should be considered on key issues such as impairment severity and functional

effects). Dr. Sullivan's medical source statements overcome both of the ALJ's

objections to the opinion of Dr. Conger, his VA colleague. Dr. Sullivan is a physician

who qualifies as an "acceptable medical source." And, in addition to finding that

plaintiff has substantial limitations on her ability to stand, walk, and sit, he also found

---

[16] *See, e.g., Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (upholding ALJ's
determination that a treating doctor's opinions were unpersuasive chiefly because his findings
were contrary to those in the consultative examination and because the treating doctor failed to
provide any objective medical evidence to support his findings).

that she would need to lay down intermittently during the day at an unpredictable frequency. (T. 1001). The fact that Dr. Sullivan's medical opinions overcame the deficiencies the ALJ identified with respect to the opinions of Dr. Conger, is further support for the court's conclusion that Dr. Sullivan's opinion is material and should have led the Appeals Council to review the ALJ's decision. Accordingly, this court recommends that the case be remanded for proper consideration of Dr. Sullivan's opinion and any other relevant evidence of record on remand.

## VII. <u>REMAND</u>

Because the Appeals Council may have erred by not providing any reason for rejecting Dr. Sullivan's medical opinions, and because there is a reasonable possibility that the ALJ would have reached a different result if the original administrative record had included Dr. Sullivan's medical source statements, a remand under sentence four of Section 405(g) is appropriate. *Davidson v. Colvin*, No. 1:12-CV-316 (MAD/VEB), 2013 WL 5278670, at *1 (N.D.N.Y. Sept. 18, 2013); *Sears v. Colvin*, 2013 WL 6506496, at *5, 7. Plaintiff has moved for a remand solely for the determination of benefits. However, given the conflicting medical evidence in this case, it is possible, on the current record, that the ALJ could properly support a finding that plaintiff was not disabled, notwithstanding the opinion evidence first submitted to the Appeals Council.[17] Thus, this court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and I cannot recommend a remand

---

[17] The most recent medical reports from the VA largely indicate that, as of 2013, plaintiff's back pain was under control with her current treatment, and that Zoloft was helpful in controlling her overall mood and anxiety. (T. 972-973, 975, 988, 990-993).

solely for the determination of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir.

1996).  Given the extensive delays in plaintiff's administrative case to date, the court

urges the Commissioner to expedite proceedings on remand.[18]

       **WHEREFORE,** based on the findings in the above Report, it is hereby

       **RECOMMENDED**, that the decision of the Commissioner be **REVERSED**

and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a

proper evaluation of the medical opinion and other evidence, and other further

proceedings, consistent with this Report.

       Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk

---

[18] Plaintiff argued that the ALJ erred by using Dr. Ganesh and Dr. Shapiro as consultative examiners, rather than contacting one of plaintiff's treating sources for the consultative opinions. "While a treating physician is 'ordinarily' the preferred source to perform an additional examination provided that he is 'qualified, equipped, and willing' to do so for the prescribed fee, 20 C.F.R. §§ 404.1519h, 416.919h, this preference is not absolute, and the regulations provide a non-exhaustive list of situations where another source may be consulted, *id*. §§ 404.1519i, 416.919i." *McGinnis v. Colvin*, No. 1:12-CV-00219-MOC, 2013 WL 3353836, at *5 (W.D.N.C. July 3, 2013).  Examples of reasons why the ALJ would need to order a consultative examination conducted by a non-treating source include "inconsistencies in the treating physician's reports, a nonproductive or uncooperative treating physician, or one who consistently fails to provide timely reports, and an inexperienced or ill-equipped source, or one who is unwilling to perform the exam."  *Nash v. Astrue*, No. CA 09-342, 2012 WL 3238226, at *14 (D. Del. Aug. 7, 2012). In this case, plaintiff does not assert that she previously asked the Commissioner to use any of her treating sources as a consultant, or timely objected to the Commissioner's use or consideration of independent consultative examiners.  (T. 68).  Under those circumstances, the ALJ's failure to explain why treating sources were not used as consultants would not, in this court's view, constitute an error, or would be harmless.  *See Nash v. Astrue*, 2012 WL 3238226, at *14;  *McGinnis v. Colvin*, 2013 WL 3353836, at *5 & n. 63 (distinguishing *Moody v. Barnhart*, 114 F. App'x 495 (3d Cir. 2004)).  However, if, on remand, plaintiff requests that her treating sources be contacted for updated consultative reports, the ALJ should follow the appropriate regulations, cited above, in choosing the consultant(s) and in explaining the reasons for his choice(s).

of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  January 28, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge